## PRICE AND WIFE vs. NOTREBE'S HEIR AND EXRS.

In a proceeding in equity by the widow, against the heirs and executors of her deceased husband, for dower, an executor, who is a party to the record, liable to cost, and interested in freeing himself from responsibility, and charging the estate in the hands of the heirs, is an incompetent witness for the complainant.

There is no pretence for a bill of review, where the decree is in accordance with the whole scope and tenor of the original bill, in which there was no allegations upon which the decree prayed for in the bill of review, could have been based, and no discovery alleged of any new matter or evidence, which could not have been had when the original decree was passed.

A bill of review cannot be maintained upon allegations that the decree, on the original bill, was entered without the assent of the complainant; or through the mistake, carelessness, or unfaithfulness of her solicitors :

46          CASES IN THE SUPREME COURT

Price and Wife vs. Notrebe's heir and Exrs.          [JANUARY]

Nor for the failure of the court to decree to the complainant, on a bill for dower against the heir and executors, her dower on the rents and profits of her deceased husband's real estate, and in the money on hand at his death, where the court had referred the question of such rents and profits to the master—the right claimed as to the money on hand being conceded in the answer, and not decreed against her. This court, in such case, will intend that the question, as to the money on hand, as well as the rents and profits, was reserved by the court, in the original case, until the coming in of the report of the master, and the final decree.

*Appeal from the Circuit Court of Arkansas County in Chancery.*

The Hon. THEODORIC F. SORRELLS, Circuit Judge.

FOWLER, for the appellant. The court below, we think, clearly erred in dismissing the bill of review, for whatever may be the evidence as to the new matter charged, or the law arising thereon, some of the errors pointed out by the bill as existing in the former decree, clearly ought to have been corrected. And, if so, to dismiss the bill, was erroneous. See 2 *Sm. Chan. Rep.* 51, 56; 4 *Mon. Rep.* 145; 3 *Gilm. Rep.* 10; 4 *Hen. & Munf. Rep.* 244; *Story's Eq. Plead.*, sec. 407, 420; 10 *B. Mon. Rep.* 301.

In the original bill, which is responded to by the pleadings, dower was claimed in the cash on hand at the testator's death; and the decree does not give the complainant any part of it, although the answers admit that there was money on hand. See *Ark. Digest, p.* 448, sec. 20; 5 *Ark. Rep.* 620.

She was also clearly entitled to one-third of the *rents* and *profits* of the real estate, and of the *hire* of the slaves, from the death of her husband. See 1 *Story's Eq. Jur.*, sec. 512, 626, 625; 2 *Cond. Rep.* 538; 7 *Cranch Rep.* 370; 2 *Bro. C. R.* 631 *to* 634; 4 *John. Ch. Rep.* 604; 5 *ib.* 488; 4 *Kent Com.* 69; 4 *Paige Ch. Rep.* 99; 6 *ib.* 479; 10 *Misso. Rep.* 749.

The rents and hire are not embraced in the decree, and if the court had any right, after the final decree, in which they were not mentioned, to direct the master to take an account of them, which the master never did, this forms no part of the decree, and

the complainant's rights can only be secured by such a bill as this, asking the *supplemental decree*, as prayed for in this case. See 13 *Pet. Rep.* 462; *Cooper's Eq. Plead.* 305, 306.

CUMMINS, contra. The decree can only be according to the case made by the bill and the relief prayed. *Lube's Eq. Plead.* 18, *and note;* 13 *Ark. Rep.* 187; *ib.* 94, *and cases cited; Story's Eq. Plead.*, *sec.* 41, 42.

In the original bill, one-third the *nett profits* and *income* is prayed, and no more could be given.

The claim of dower in negroes and lands, necessarily involved the question as to the extent of her right.

She could not split up her rights in a particular subject — recover for part of a right, and then sue for residue. *Story's Eq. Plead.*, *sec.* 287; 3 *Cow. and Hill's Notes*, n. 588, *p.* 830, *et seq.*; n. 590, *p.* 839, 840; n. 592, *p.* 842; n. 692, *p.* 965, 957, 966 *et seq.*

All the facts in the case were known before and at the time of the decree — the party voluntarily took decree on the answers confessed. An amendment or supplement in such case would be a novelty. *Story's Equity Plead. sec.* 887, 890, 336, *&c.*, 338; 4 *Paige* 130.

There is no error in law, or newly discovered evidence, to warrant a bill of review. *Story's Equity Plead.*, *sec.* 403, 407 *and note;* 411, 421 *and notes;* 422.

The deposition of the executor ought to have been suppressed, because he was subject to personal decree for the whole claim set up, and was liable for costs.

Mr. Justice SCOTT delivered the opinion of the Court.

This bill, as well as the original one, the proceedings in which are now sought to be reviewed, was filed by Mrs. Notrebe, as widow of Frederick Notrebe, deceased, against the executors and heirs at law of the latter. Mrs. Notrebe having afterwards intermarried with Price, he, therefore, was made a party complainant.

48 CASES IN THE SUPREME COURT

Price and Wife vs. Notrebe's heir and Exrs. [JANUARY

The case presented on the original bill, was, that on the 23d of October, 1843, Frederick Notrebe made his last will and testament, whereby he devised one-half of his estate to his wife, and the other to his son and grand - daughter. The son having died in the lifetime of the father, the grand-daughter took under the will the share devised to him. In April, 1849, Mr. Notrebe died. On the seventeenth of June following, his will having been probated, letters testamentary were issued, and the estate was taken in custody by the executors. On the 10th of September, 1850, the widow, by deed, which was recorded on the 16th of that month, released her right under the will, and proceeded, by bill, against the executors and heir at law, in the Circuit Court of Arkansas county, for dower: alleging all that was needful, with specific averments, as to all the varieties of property constituting the estate; and after avering that no sum of "money" had been paid her, as dower, proceeds to allege that she had often applied to the executors "to account with her, and pay to her the amount of one-third part of the nett income, proceeds and profits of the said estate accrued, due since the said Frederick's death, and received by them, or either of them, and to let your oratrix into possession of the one - third part of the proceeds and profits of said estate and premises, and to assign and set out for your oratrix, a full third part of the said estate, as and for her dower therein," charging refusal, and interrogating as to whether they had not "possessed themselves of all the real, personal and slave estate, moneys, goods, chattels and effects of the said Frederick Notrebe, deceased;" whether or not "large profits of said estates and premises" had come into their hands, and whether or not they had "refused to pay her one-third part of said profits," &c., &c., and praying inventory of all estates, &c., and where, and in whose "custody, possession or power, the same have been since the death of F. Notrebe, and at what profit"—that she might be decreed dower in all of said estate, and an account be taken, and she "be let into possession, and the receipt of the profits of one - third part thereof, both accrued and to accrue," and for a commission

to assign dower to her, that she may hold the same in severalty, and for general relief.

All the defendants answered fully: the executors admitting that they were in possession of the whole estate of every description, and setting out inventory of all; except, as they state, a large amount of plate and household stuff, which they had not inventoried, but suffered to remain in the hands of the complainant; that they had paid the complainant various sums of money, which they name over, and that she had had the use of various slaves, which they specify, as well as of the mansion house, from the time of the death of the testator: that the plantations had been carried on as in the lifetime of the testator: state the amount of cotton made and sold, and the moneys arising therefrom, which they say was insufficient to supply and carry on the plantation: that some buildings in the Post of Arkansas had been rented out, and another small place in the country, the residue of the real estate being wild and unproductive lands.

No exceptions being taken to the answer, and replication having been filed thereto, and all the parties submitted the cause, it was heard at the October term, 1851, when commissioners were appointed, with plenary powers, to lay off dower to the complainant, according to her prayer, instructing them to allow her to select such slaves as she might desire for her body and household servants, and deliver them to her immediately, estimating them at their real value, in the general division, and to report at the next term, when either party should have the right to raise any objection. Accordingly, the commissioners performed their duties, and reported to the April term, 1852, as instructed, showing how they had divided the lands, slaves, stock, and other property, and recommended that the respective parties should not enter upon the respective parts of the estate allotted to each, until the ensuing first day of January, 1853.

At the October term, 1852, no objection having been interposed to the report of the commissioners, and all the parties appearing by their respective solicitors, the cause was again heard

upon the bill, answer, replication and report of the commission-ers, and confirming the same, the court decreed the complainant, in due form, dower estate in severalty in the lands, slaves, mules, horses, oxen, and silver plate, and that she should enter upon, and take possession of the same, on the 1st of January next fol-lowing, and also decreed "That William Refeld should be ap-pointed master, and be required, by the next term of that court, to make and state an account of the income and profits of the property of Notrebe, from the time of his death to the 1st day of January, 1853, and to deduct therefrom all taxes, outlays and expenses in respect thereof, and exhibit the balance; and what is the one-third of such nett profits, after all expenses are deduc-ted.

Whether or not the master ever performed this duty, does not appear from the record. It appears, however, that at the term to which he should have reported, the bill, on which these pro-ceedings before us are founded, was filed. In which, after set-ting out at full length, all the proceedings, which we have sub-stantially set out above, and alleging some unimportant matters of no relevancy, and which are fully denied by the answer of Morton and wife, and wholly unsustained by the record, the com-plainant proceeds to allege, that she was aggrieved by the decree, and ought not to be bound by it, for the following reasons, speci-fically assigned, *to wit:*

1st. Because it does not give her one-third of the money on hand at the death of her husband.

2d. Because it does not give her one-third of the rent of the town property at the Post of Arkansas.

3d. Because it does not give her the hire of the slaves, and the rent of the land, which were assigned to her for dower, from the death of her husband up to the 1st January, 1853.

4th. Because said decree was made without her assent, and through mistake and oversight of her solicitors. That it was the result of haste and surprise, and was entered without replication and without ever being read to the court; that neither the com-

plainant nor her solicitor, was apprized of the defects, imperfection and incompleteness of said decree, until some weeks subsequent to the adjournment of the court.

5th. Because, by it, the complainant is restricted to one-third part of the mere income and profits of the plantation, and does not, as it should, give her the value of the hire of her negroes and rent of her lands.

And after the statement of some other irrelevant and unimportant matters, the bill concludes with a prayer that the proceedings aforesaid should be reviewed, added to, altered and annulled, and the defendants be made to account with the complainant for the moneys on hand at the time of the death of her late husband, and pay over to her one-third part; and also, account for the rent of the town property, and give her the one-third part; and for the reasonable hire of the slaves and rents of the land assigned to her as dower, from said death, up to the 1st January, 1853, and for general relief.

The executors failed to appear, and a decree, *pro confesso*, was taken as to them; but Morton and wife answered the bill very fully, denying emphatically many charges in the bill, which we have not thought it at all necessary to notice, in stating its purport, since they were, as we have said irrelevant and immaterial, and totally unsustained by the record; and, therefore, we shall state such portions of his answer only as relates to the matters complained of in the purport of the bill, as we have set it out above.

As to the complaint that the decree does not give the complainant one-third part of the money on hand at the death of Mr. Notrebe, he answers that the answer of the executors to the original bill, discovers the sum on hand at that time, and that the complainant's claim to dower therein, was fully admitted by all the defendants, and that, by agreement, T. Farrelly was to pay complainant her one-third part thereof. That he still fully admits her rights as to this money, but that none of it ever came into respondent's hands. And he submits that, inasmuch as her rights

52 CASES IN THE SUPREME COURT

Price and Wife vs. Notrebe's heir and Exrs. [JANUARY

on this point were fully admitted by the pleadings, no new bill was necessary; but that the enlargement of the reference to the master, already pending, was amply sufficient, respondent being perfectly willing, as he has always been, that she shall have the one-third part of this money, either under the agreement aforesaid, or in any way otherwise. And as to the rents of the town property at the Post of Arkansas, he answered that he had been informed, and believed, that that was likewise intentionally kept out of the reference by both parties, to be also settled by Col. Farrelly, who knew all about the matter; the amount being very small after deducting taxes and expenses, not being of sufficient importance to be worth the expense of a reference: complainant's right to the one-third part thereof, having been, by said pleadings, and otherwise, always admitted. And as to the charge in reference to the decree, he answered that if it was meant by the bill to charge, or intimate that said decree was entered in the present form, without the knowledge and assent of complainant's solicitors, duly employed in the cause, it was simply false. If it was intended to charge or insinuate that any concealment or undue advantage, on the part of respondents, or their solicitor, was exerted, in any respect, it was wholly false; and they averred the truth to be, that the decree and orders were drawn up and submitted to the complainant's solicitor, who read and fully understood them at the time, and if any of the orders were not read in court, it was simply because they had been read and approved by solicitors of both sides. And if complainant's solicitor has since discovered the omission in regard to the moneys on hand at the death of Mr. Notrebe, and the rents of the houses at the Post of Arkansas, it is simply because he has forgotten the understanding at the time, and the reason for the same.

With regard to the complaint, that the decree did not give complainant the hire of the negroes and rent of the land, which were assigned to her for dower, from the death of Mr. Notrebe up to the 1st of January, 1853, and restricted her to one-third part of the nett profits of the plantation and estate, the respond-

ents answered, that complainant had never claimed in any other-
wise, and under her bill was entitled to no other decree in that
regard, than that made. And if the executors were bound to
rent out the lands and hire out the negroes, and did not do so,
and the value of complainant's dower was diminished thereby,
that might be the foundation of an individual claim of complain-
ants on them, in respect of such dereliction, but no ground for a
charge on her part against the estate. That from the first, she
knew the course of management of the executors, and acquiesced
in it; and was, therefore, estopped to set up such a claim. That,
in truth, said lands could not have been rented out for much, if
any thing; and said negroes, if hired out, would have greatly
jeopardised the interest of all concerned in the estate. And in-
sisting that the proceedings already had are binding upon all the
parties thereto, and conclusive as to all matters embraced; and
that all the relief claimed, to which complainants are entitled,
can be rightfully obtained by a mere extension of the reference
to the master, now pending, if complainants persist in rejecting
the agreement aforesaid, to receive the money from Col. Farrelly,
without troubling the court with the matter, and harassing re-
spondents so unnecessarily, the respondents demur to said bill of
review and supplement, and submit that complainants have not
made such a case as entitle her to the relief prayed, or any part
thereof, or any relief whatsoever.

Replication was put in to this answer, and leave given to take
depositions. And also, leave against objection of Morton, to take
the deposition of the executors. Under this latter order, the depo-
sition of Terence Farrelly was taken, which was afterwards sup-
pressed, and properly so: he being incompetent by reason of his
being one of the parties to the record liable for costs, and inter-
ested in freeing himself from liability to the complainant, and
casting the same upon the heirs. *Pryor et al. vs. Ryburn, Janu-
ary Term*, 1856. The proof introduced by the other depositions,
go to show the value of rent of land and hire of negroes, allotted
to Mrs. Notrebe for dower, from the death of her husband up to

54          CASES IN THE SUPREME COURT

Price and Wife vs. Notrebe's heir and Exrs.          [JANUARY

the 1st January, 1853. That the Notrebe plantation was a very uncertain one, in consequence of liability to overflow; that it was actually overflowed three years out of four. That it was, in consequence, scarcely rentable at all, at any price: several of the witnesses saying, that rather than cultivate it because of the liability to overflow, they would prefer to clear land in the woods, not liable to overflow; and all the witnesses say that the slave property was in such a condition that it would have been dedrimental to the estate to hire out the negroes, and the interest of all concerned was better subserved by keeping them on the plantation; and some of them prove that the complainant lived on the plantation, in the mansion-house, all the time, in a condition to see, and daily know all that was done by the executors and heir with the plantation and slaves, and never made any objection to the employment of the slaves on the plantation, as was done: and one of the witnesses proves a settlement of the executors in the Probate Court, showing the disposition of the whole receipts from the plantation thus cultivated.

The court, upon the hearing, dismissed the bill of review, and going back to the original bill of complaint, and the proceedings thereon, ordered an account to be taken, under the decree therein rendered, of the profits arising from the estate from the death of Mr. Notrebe to the 1st January, 1853, and an account of the moneys on hand at his death, and that a decree should be rendered for one-third of each, in favor of complainant, and directed the master to proceed to make and state such account in pursuance of the original bill and decree thereon; specifically directing him as follows, *to wit:*

1. "That he state an account of all moneys at the death of said Frederick Notrebe.

2. That he state an account of all expenses and profits of said plantation, slaves, and other property thereon, from the death of said Frederick Notrebe, up to the 1st of January, 1853, the time when dower was assigned to complainant, Mary F., under said decree upon her original bill, and that he strike and report the balance.

3. That he state an account of all rents of the property of said Frederick Notrebe, at the Post of Arkansas and elsewhere, other than the plantation aforesaid, from the death of said Frederick to this time, and report the amount thereof.

4. That he state an account of all other sources of income from said estate, other than from choses in action and debts due the same, and report the amount thereof.

5. That he state an account of all moneys received by complainant, Mary F., or paid out for her from said estate, since the death of said Frederick Notrebe; and that the master report at the next term of this court, to which time further orders are reserved.

From which decree the complainants appealed to this court, excepting to so much thereof as dismissed their said bill of review and supplement.

With regard to the complaint against the decree on the original bill, that it did not give the complainant hire for the negroes and rent for the land, assigned to her for dower, from the death of her late husband, but restricted her to one-third part of the nett profits of the plantation and estates, we think it totally groundless in a legal point of view; because there can be no pretence of error in the judgment of the court, as to this, since it is in exact accordance with the whole tenor and scope of the bill, and in which there were no allegations upon which could have been based a decree for hire and rents, in lieu of nett profits specifically, directly, and formally proceeded for; (*Cook vs. Bronaugh,* 13 *Ark. Rep.* 187, 188,) and as little pretence of the discovery of any new matter, or evidence, which could not possibly be had or used at the time when the decree passed. On the contrary, as to this, it abundantly appears that the complainant knew every fact when the original bill was filed. Under such circumstances, to permit her to hold on to such portions of the decree only as she likes, and let her go back and make a new case, as to such portion as she does not like, although the latter be in strict accordance with her case first made, would be a novelty,

to say the least of it, as inconsistent with the general doctrine of non-divisibility of rights, as with the chancery doctrine, in accordance with it, of multiplicity of suits.

Indeed, under the peculiar facts of this case, when it is considered that the complainant was devisee, under the will, of one-half of the entire estate, was tardy in changing her character from devisee to dowress, when so many circumstances indicated her acquiescence in the former, when she was so fully cognizant of all that was transpiring on the plantation where she daily resided, there would seem to be some fair ground of natural equity, in view of the disasters from overflow by the act of God, upon which the heir might have stood, without any impeachment of duty or affection, and invoked a strict adjudication of the dowress' rights in the premises, had she originally claimed rents and hires. If so, much more may she now occupy this position, when having originally chosen an equitable ground, the complainant now seeks to flee from it, under no stress of adverse pecuniary circumstances, to carry fruits to a stranger, who can have no peculiar equitable claim to them.

Besides these considerations, which we regard as satisfactory on this point, the counsel for the heir takes a higher ground; which, in the views we have taken, need not be passed upon. And this is, that under our peculiar laws, making all species of property, assets in the hands of an executor or administrator, even conceding the complainant the right to recover the rents and hires, the estate cannot be charged with the neglect of the executor, but the executor himself must pay the dowress for his own neglect. A proposition which, as we have said, we have not found it necessary either to consider or to pass upon.

With regard to the complaint against the decree, for the alleged imperfections specified above, in the 4th division of complainant's present complaints, it seems sufficient to say, in view of the fulness of the answer on that point, that the complainant cannot be permitted to repudiate her acts of record, done by her solicitors, but she must abide by them, and hold her solicitors

responsible, if they were careless, or otherwise derelict, or unfaithful to her injury, notwithstanding, as seems very unreasonably alleged, the court and the opposite solicitors were as careless and as unfaithful in the premises as her own.

With regard to the complaint, as to the town property at the Post of Arkansas, the reference to the master Refeld, which was pending at the time these proceedings were commenced, was sufficiently broad to embrace that, because in its terms it was not confined to the "income and profits" of the plantation, but extended to the "property" of the estate generally; and was, therefore, directly responsive to the original bill, and consistent with the decree.

The complainant's right to dower in this town property, as well as in the cash on hand, at the death of Mr. Notrebe, was conceded by the pleadings, and admitted by the evidence in the answers. And upon the hearing of the case on bill, answer, replication, and the report of commissioners, who had admeasured and set apart dower to the widow in the lands, slaves, stock, and other visible property, the record states that the court was of opinion, upon consideration, that the complainant was entitled to dower "as prayed," and thereupon proceeded to decree to the complainant, dower, in severalty, in so much of the estate as was referred to the commissioners, and was embraced in their report, and then omitting to make any specific decree as to the money on hand at the death of Mr. Notrebe, although embraced in the general opinion expressed, that the complainant was entitled to dower "as prayed," proceeded as to the "income and profits," generally, to refer these to the master Refeld, to take an account and report at the next term. Doubtless, upon the ground, as we must presume, in favor of the doings of the court below, of the uncertainty of this income and profits, both as to whether there was really any nett amount, and, if so, how much — and these could be ascertained only by a statement of accounts, either by the court, or by a master. Hence, as to this part of the complainant's case, the merits had not been sufficiently developed to

enable the court to pass upon it finally, otherwise than hypotheti-
cally, which the court, it is true, might have done by appropri-
ate further order and directions; which, however, it does not ap-
pear, from the record, was done. Hence, there was something
remaining to be done by the court, judicially, between the parties
remaining in court, which we cannot suppose was erroneously
omitted, as we might have otherwise supposed as to the money;
because, as to these rents and profits, such an erroneous omission
cannot be supposed, in the face of an express reference to the
master, to take and report an account, as to them, by the next
ensuing term, at which time, it is reasonable to infer, the court
designed to put an end to the case, and grant or refuse the com-
plainant a remedy, *as on her whole case,* upon which, under the
statute contemplating but one final decree, the parties, if any of
them felt aggrieved, might appeal. *Crittenden Ex parte,* 5 *Eng.*
350; *Haynie vs. McLemore,* 7 *Eng.* 397.

And this mode of proceeding by the court corroborates so much
of the answer as states "That when said decree was made, it was
extremely desirable to both parties to have the matters in con-
troversy of most importance settled, and finally ended, without
delays therein, or involving them with inferior matters, which
would cause delay by requiring the interposition of a master in
chancery, and the delays incident thereto;" and the further mat-
ter stated as to the verbal understanding among the solicitors, at
the time the decree complained of was rendered, that Col. Far-
relly should pay over to the complainant one-third part of the
money on hand at the death of Mr. Notrebe, and one-third part
of the nett amount of the rents and profits of the town property
at the Post of Arkansas, without troubling the court to render a
specific decree therefor; which Morton and wife, in their answer,
say they are still willing shall be done, or that she may have
those sums in any way otherwise—"her rights in the premises
having never been disputed by them, and never will be."

Suppose, that in addition to what appears in the record in this
case, there had been an express reservation, to the effect, that as

to all the matters touching the income and profits, and touching the cash on hand at the death of Mr. Notrebe, and unitl these should have been, in future, judicially passed upon, all that had been done, in reference to the visible property, should remain interlocutory, no one would have supposed the decree in question final, even under a practice which might allow of more than one final decree in a cause. The expressed reservation, in such a state of case, having the effect to prevent any presumption that might have otherwise arisen, that the decree was final.

To the same effect, as an implied reservation, under our practice, tolerating but one final decree in a cause, must be regarded the affirmative action of the court in the case at bar, in referring to the master the matter of income and profits unconnected with any decree, in advance, as to the final disposition of this part of the complainant's case. Otherwise, the Circuit Court would be taken to have committed the error of having omitted to pass judgment on a part of the case made by the complainant, in the face of the record, showing that court to have been in the actual progress, in a legitimate mode, to the very point complained of.

To intend such an implied reservation, under such a state of case, is even less than to indulge the ordinary presumption in favor of the regularity of the proceedings in the court below. And to refuse to do so, is to do more than simply to reverse that common rule. Because, that presumption is ordinarily indulged when nothing appears in the record to repel it. Much more, then, should it be indulged, when in fact something does affirmatively appear in the record, to authorize and sustain it.

Regarding, then, the decree in the original proceedings complained against, as open, and the matter of income and profits pending before the master, as embracing the specific matter of the rents of the town property at the Post of Arkansas, nothing remained of the matters complained of in the proceedings before us, except the matter of the money on hand at the death of Mr. Notrebe, of which there was no ground for complaint, until the complainant's admitted rights in the same had been adjudicated

against by the court, either with or without a reference to the master.

Upon the whole case, therefore, we find no error authorizing the reversal of the decree, and think it ought to be affirmed.